UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JAMES ST. LOUIS, *on behalf of himself and all*　　　　Docket No.:
*Individuals similarly situated,*

                              Plaintiff,　　**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

   -against-

SELENE FINANCE, LP
                              Defendant.
-------------------------------------------------------------------x

      Plaintiff, James St. Louis, ("Plaintiff" or "St. Louis"), by and through his attorneys, the IM Law Group, PC, as and for its Complaint against Defendant, Selene Finance, LP ("Defendant" or "Selene") respectfully sets forth, complains and alleges the following:

## INTRODUCTION/PRELIMINARY STATEMENT

1. As the entities that perform the day-to-day management of loans on behalf of lenders and investors, "servicers can have a direct and profound impact on borrowers." *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (RESPA). (The rules promulgated under RESPA designed to guide the Loss Mitigation Application process are known Regulation X), 78 Fed. Reg. 10696, 10699 (Feb. 14, 2013) (codified as 12 C.F.R. 1024.41).

2. One of the ways mortgage servicers can have a profound and adverse impact on borrowers is through the furnishing of inaccurate information concerning borrowers to credit reporting agencies. The Federal Trade Commission explained as follows: "[t]he loan servicing process depends on accuracy at all stages. Inaccurate servicing practiced can throw homeowners into a spin cycle with far-reaching consequences, including errors on their credit reports that can haunt them for years." Lesley Fair,

1

*Will a $63 million FTC-CFPB settlement encourage Green Tree to turn over a new leaf?* FTC (Apr 21, 2015).

3. The financial crisis of 2007-2008 exposed pervasive consumer protection problems in the mortgage servicing industry. *See* 2013 Regulation X Amendments. For example, the Government Accountability Office "found pervasive problems in broad segments of misled, or failed to communicate with, borrowers, lost or mishandled borrower-provided documents supporting loan modification requests, and generally provided inadequate service to delinquent borrowers." *Id.*

4. As a part of its response to the financial crisis of 2007-2008, Congress established the Bureau of Consumer Financial Protection and granted it broad rulemaking, enforcement, and supervisory powers related to Federal consumer financial laws, including Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C §§ 2601-2617 and rules promulgated thereunder and codified in 12 C.F.R. 1024.41. The laws and rules were designed to provide protection to borrowers/homeowners and bring order to what became a very complicated and elusive process, commonly referred to as Loss Mitigation.

**JURISDICTION AND VENUE**

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331; 12 U.S.C. §2605(f). If applicable, the Court also has pendant jurisdiction over the State law claims in this action pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), as that Defendant transacts business here, Plaintiff resides in this District and the acts and transactions that give rise to this action occurred, in substantial part, in this district.

## PARTIES

7. Plaintiff, James St. Louis, at all relevant times to this action, has been residing in Queens County, State of New York.

8. Defendant, Selene Finance ("Selene"), is a foreign Limited Partnership organized under the laws of the State of Delaware.

9. Selene, at all relevant times to this action, has conducted business in the State of New York as a servicer of federally related mortgage loans, for consumer purposes, as defined under 12 U.S.C. 2602(1).

## Factual Background

10. In an early part of 2017, Plaintiff submitted a loss mitigation application to Defendant for review, commonly referred to as a "short sale." ("Loss Mitigation Application #1")

11. Defendant did not provide any notices and/or status updates on Loss Mitigation Application #1throughout 2017, until January 18 2018.

12. Specifically, a letter dated January 18, 2018 was mailed to Plaintiff's then counsel stating that the loss mitigation application is denied for the following reason: "Your investor has not approved the workout due to excessive delinquency."

13. In late December of 2017, having not heard from Defendant regarding Loss Mitigation Application #1, Plaintiff submitted a brand-new loss mitigation application ("Loss Mitigation Application #2").

14. Defendant served a Missing Documents Notice upon Plaintiff's counsel, dated December 28, 2017.

15. The Notice stated as follows: "Your package has been deemed incomplete."

16. In this letter, Defendant outlined a list of five (5) items that remained outstanding and were needed in order for the Defendant to proceed with review and consideration of Plaintiff's request for loss mitigation.

17. On January 15, Plaintiff, through his counsel, submitted all five (5) requested documents to Defendant's foreclosure attorneys, Rosicki, Rosicki & Associates.

18. On January 16, Plaintiff, through his counsel, submitted all five (5) requested documents directly to Defendant. A fax confirmation was generated indicating successful delivery of the missing documents directly to Defendant.

19. The cover page for the provided missing documents clearly stated that these missing documents are being provided more than 37 days prior to a foreclosure auction sale.

20. On January 19, 2018, Defendant's counsel sent an email that states as follows: "The lender has confirmed receipt of the package and it is in review. At this time, no documents are being requested."

21. This email definitively confirmed for the Plaintiff that Defendant was now in possession of a complete loss mitigation application and such application was under review.

22. Plaintiff received letters dated: January 24, 26, and 29, indicating that loss mitigation options are available and might allow Plaintiff to save his home.

23. Yet on January 25, 2018, Plaintiff's home was listed for a foreclosure auction sale on a popular online real estate website: www.propertyshark.com. The website indicated that the date of the sale was February 23, 2018.

24. No notice of auction was provided to the Plaintiff, as required under the New York law.

25. In early February of 2018, Plaintiff's counsel made efforts to get a status update on the review of Loss Mitigation Application #2. Defendant's counsel responded with generic statements such as: "I reached out again this morning for an update on the review. I will advise as soon as I receive a response." Yet an update never came.

26. Defendant did not provide any notices or updates, thus forcing Plaintiff to incurr additional costs and legal fees by filing a motion in New York State Court to stay the foreclosure sale of February 23, 2018, and then subsequently filing a bankruptcy to stop the auction sale.

27. As a result of Selene's actions, St. Louis suffered actual damages: (1) an amount equal to any deficiency on the mortgage loan that has been demanded and shall be adjudicated against Plaintiff upon completion of the foreclosure action; (2) damage to his credit and reputation as a result of Plaintiff unnecessarily remaining in a default status due to Defendant's failure to complete review of Loss Mitigation Application #2 loss mitigation application; (3) costs and expenses associated with taking additional steps to defend his rights in the currently pending foreclosure action in New York State court; and (4) specifically, and without limitation, Defendant's conduct has caused St. Louis damages in the form of:

    a. stress;
    b. aggravation;
    c. loss of sleep;
    d. loss of appetite;
    e. crying
    f. anxiety
    g. nervousness
    h. emotional distress
    i. fear
    j. worry and loss of happiness;
    k. loss of concentration;
    l. irritability;

      m.   embarrassment;
      n.   humiliation;
      o.   intimidation;
      p.   loss of tranquility;
      q.   indignation; and
      r.   pain and suffering.

## COUNT ONE

### VIOLATION OF RESPA, 12 U.S.C. §2605(6)(f); 12 C.F.R. §1024.41(c)
### (CLASS CLAIM)

28. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

29. Pursuant to Rule 23 of Federal Rules of Civil Procedure, Plaintiff brings this action for herein and on behalf of a Class initially defined as:

All persons residing in the United States (1) who have a federally related mortgage with Selene Finance LP; (2) who submitted a loss mitigation application with Selene Finance LP; (3) about whom Selene Finance, LP after receiving a complete loss mitigation application more than 37 days before a foreclosure sale, did not within 30 days valuate the borrower for all loss mitigation options available; and/ or did notify the borrowers in writing within 30 days after receiving a loss mitigation application as to the approval or denial of an offer for loss mitigation.

30. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through Selene Finance LP's internal business records, and the class members may be notified of the pendency of this action by published and/ or mailed notice.

31. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23 (a)(2)** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual

6

class members. The common questions include: whether Selene Finance LP's violated federal statute that prohibits dual-tracking: when a Lender allows a foreclosure sale to move forward while reviewing a homeowner for a Loss Mitigation option.

32. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. Additionally, Plaintiff's claims are based on the same facts and legal theories as each of the class members.

33. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because his interests coincides with, and are not antagonistic to, the interest of the putative class members. Plaintiff has retained counsel competent and experienced in litigation and intends, with his counsel, to continue to prosecute the action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiff nor his counsel have any interest that might conflict with their vigorous pursuit of this action.

34. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation

presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Selene Finance LP's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

35. 12 C.F.R. 1024.41(c)(2)(iv) states in relevant part: "A loss mitigation application shall be considered facially complete when a borrower submits all the missing documents and information as stated in the notice . . ."

36. Plaintiff, through his counsel, submitted "all the missing documents" to Defendant's counsel on January 15, 2018. Plaintiff, through his counsel, submitted "all the missing documents" directly to Defendant on January 16, 2018. The auction sale was scheduled for February 23, 2018. This means that the loss mitigation application was deemed complete either 40 or 39 days prior to the scheduled auction sale, respectively.

37. If the auction sale was scheduled prior to January 15, 2018, then Defendant had an obligation to cancel such sale, pursuant to 12 C.F.R. 1024.41(g).

38. In the alternative, if the auction sale was scheduled after January 15 or 16, then Defendant has intentionally and blatantly violating 12 C.F.R. 1024.41(g).

39. In addition, if the auction sale was scheduled after the submission of the missing documents, and after Defendant's counsel providing in writing on January 19, 2018 that the Defendant is in receipt of Plaintiff's loss mitigation application, then it is even more indicative of a blatant disregard of the mandate of 12 C.F.R. 1024.41(g),

namely to not move forward with a foreclosure sale during a review of a complete loss mitigation application.

40. There is a substantial likelihood that Selene repeatedly violated 12 U.S.C. §2605 and 12 C.F.R. 1024.41 during its regular course of business as a servicer of residential mortgages, in the same way that Selene violated the above-referenced section vis-à-vis James St. Louis.

41. As a result of Selene Finance, LP's violations of RESPA, Plaintiff and the putative class members are entitled to recover "any actual damages to each of the borrowers in the class," "any additional damages" "in an amount not greater than $2,000 for each member of the class," their attorney's fees and costs. 12 U.S.C. § 2605(f).

## COUNT TWO

### VIOLATION OF RESPA, 12 U.S.C. §2605(6)(f); 12 C.F.R. §1024.41(d)
### (CLASS CLAIM)

42. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

43. Pursuant to Rule 23 of Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of a Class initially defined as:

All persons residing in the United States (1) who have a federally related mortgage with Selene Finance ,LP; (2) who submitted a loss mitigation application with Selene Finance , LP; (3) about whom Selene Finance, LP after receiving a complete loss mitigation application denied the loss mitigation application but failed to specify the reason or reasons the servicer's determined for each such trial or permanent loan modification option the reason for the denial, and if applicable the reason the borrower was not evaluated on other criteria.

44. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through Selene Finance LP's

9

        internal business records, and the class members may be notified of the pendency of this action by published and/ or mailed notice.

45. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23 (a)(2)** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include (1) whether Selene Finance LP's furnishing of adverse information concerning disputed payments is a part of a pattern or practice of noncompliance and (2) whether additional damages are appropriate in light of such a pattern or practice of noncompliance.

46. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. Additionally, Plaintiff's claims are based on the same facts and legal theories as each of the class members.

47. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because his interests coincides with, and are not antagonistic to, the interest of the putative class members. Plaintiff has retained counsel competent and experienced in litigation and intends, with his counsel, to continue to prosecute the action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiff nor his counsel have any interest that might conflict with their vigorous pursuit of this action.

48. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class

action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Selene Finance LP's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

49. 12 C.F.R. 1024.41(d) states in relevant part: "If a borrower's complete loss mitigation application is denied . . . a servicer shall state in the notice sent to the borrower . . . the specific reason or reasons for the servicer's determination . . ."

50. After Plaintiff submitted requested missing documents for Loss Mitigation Application #2 on January 15 and 16, 2018, Defendant generated a Notice of denial on January 18, 2018 for Loss Mitigation Application #1. This notice stated as follows: "Your investor has not approved the workout due to excessive delinquency."

51. Such explanation not only violates the expressed requirement of 12 C.F.R. 1024.41(d) that a servicer shall state in the notice "specific reason or reasons for the servicer's determination"; the explanation provided does not explain why "excessive delinquency" should have any bearing on eligibility for a loss mitigation option, nor

does such explanation satisfy the statutory requirement for the servicer to state in the notice why "the borrower was not evaluated on other criteria."

52. It is well known in the residential foreclosure and loss mitigation industry that the key factor that determines eligibility for loss mitigation options is the borrower's income. The denial letter did not indicate in any way whether Plaintiff's income was sufficient to qualify for an affordable monthly payment. Rather, Defendant provided a reason that has no bearing on the loss mitigation process, namely "excessive delinquency."

53. There is a substantial likelihood that Selene repeatedly violated 12 U.S.C. §2605 and 12 C.F.R. 1024.41 during its regular course of business as a servicer of residential mortgages, in the same way that Selene violated the above-referenced section vis-à-vis James St. Louis.

54. As a result of Selene Finance, LP's violations of RESPA, 12 U.S.C. §2605(6)(f); 12 C.F.R. §1024.41(d), Plaintiff and the putative class members are entitled to recover "any actual damages to each of the borrowers in the class," "any additional damages" "in an amount not greater than $2,000 for each member of the class," their attorney's fees and costs. 12 U.S.C. § 2605(f).

## COUNT THREE

### VIOLATION OF RESPA, 12 U.S.C. §2605(e)(2); 12 C.F.R. §1024.41(c)(1)
### (CLASS CLAIM)

55. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

56. Pursuant to Rule 23 of Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of a Class initially defined as:

> All persons residing in the United States (1) who have a federally related mortgage with Selene Finance ,LP; (2) who submitted a loss mitigation application with Selene Finance , LP; (3) about whom Selene Finance, LP after receiving a complete loss mitigation application denied the loss mitigation application but failed to specify the reason or reasons the servicer's determined for each such trial or permanent loan modification option the reason for the denial, and if applicable the reason the borrower was not evaluated on other criteria.

57. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through Selene Finance LP's internal business records, and the class members may be notified of the pendency of this action by published and/ or mailed notice.

58. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23 (a)(2)** Common questions of law and fact exist as to all members of the putative class, and thise are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include (1) whether Selene Finance LP's furnishing of adverse information concerning disputed payments is a part of a pattern or practice of noncompliance and (2) whether additional damages are appropriate in light of such a pattern or practice of noncompliance.

59. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. Additionally, Plaintiff's claims are based on the same facts and legal theories as each of the class members.

60. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because his interests coincides with, and are not

antagonistic to, the interest of the putative class members. Plaintiff has retained counsel competent and experienced in litigation and intends, with his counsel, to continue to prosecute the action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiff nor his counsel have any interest that might conflict with their vigorous pursuit of this action.

61. **<u>Superiority</u>. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Selene Finance LP's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

62. 12 U.S.C. 2605(e)(2) states in relevant part: "Not later than 30 days after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the

servicer shall . . ." provide a written explanation regarding information sought by the borrower.

63. 12 C.F.R. 1024.41(c)(1) states in relevant part: ". . . if a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then within 30 days of receiving the complete loss mitigation application, a servicer shall: (i) evaluate the borrower for all loss mitigation options available to the borrower; and (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage."

64. After Plaintiff submitted requested missing documents for Loss Mitigation Application #2 on January 15 and 16, 2018, a complete loss mitigation application was in Defendant's possession.

65. Defendant violated both: 12 U.S.C. 2605(e)(2) and 12 C.F.R. 1024.41(c)(1) by not providing a written 30-day Notice as to the status of Loss Mitigation Application #2. Until this very day, Defendant has not provided such notice, as required under both statutes.

66. There is a substantial likelihood that Selene repeatedly violated 12 U.S.C. §2605(e)(2) and 12 C.F.R. 1024.41(c)(1) during its regular course of business as a servicer of residential mortgages, in the same way that Selene violated the above-referenced section vis-à-vis James St. Louis.

67. As a result of Selene Finance, LP's violations of RESPA, 12 U.S.C. §2605(6)(f); 12 C.F.R. §1024.41(d), Plaintiff and the putative class members are entitled to recover "any actual damages to each of the borrowers in the class," "any additional damages"

"in an amount not greater than $2,000 for each member of the class," their attorney's fees and costs. 12 U.S.C. § 2605(f).

## COUNT FOUR

### (Violation of New York General Business Law §349)

68. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

69. In order to prevail on §349 claim of New York General Business Law, a plaintiff must demonstrate that: (1) defendant's deceptive acts were directed at consumers; (2) the acts are misleading in a material way, and (3) plaintiff has been injured as a result. *Kilgore v. Ocwen Loan Servicing*, 89 F. Supp. 3d 526, 535 (E.D.N.Y. 2015).

70. Element one of §349 defines consumer-oriented conduct as "conduct that potentially affects similarly situated consumers." *Kapsis v. Am. Home Mortg. Servicing, Inc.*, 923 F. Supp. 2d 430, 449.

71. Each of the deceptive acts and practices set forth in the First through Third Causes of Action were committed in the conduct of business, trade, commerce or the furnishing of a service in this state and constituted a violation of §349, independent of whether it also constituted a violation of any other law.

72. Each of these actions was consumer oriented and involves materially misleading conduct that is recurring and has a broad impact upon the public.

73. Defendant sent Notices to Plaintiff dated January 24, 26, and 29 in which Defendant repeatedly stated that "we are committed to helping you avoid foreclosure if possible. If you need help and you wish to retain your home, the following options may be possible, and may allow you to remain in your home." These notices were sent to

       Plaintiff after Defendant scheduled a foreclosure sale in violation of RESPA as argued in the above sections of this Complaint.

74. Similar notices almost certainly were sent to numerous homeowners as well, thus either providing false hope or confusion to an average consumer as to whether they have an option to engage in a loss mitigation review.

75. As a result of these violations of NYGBL § 349, Plaintiff has suffered actual damages, including but not limited to the harms listed in paragraph 26 above.

## **PRAYER FOR RELIEF**

**WHISEFORE**, Plaintiff requests that the Court enter judgment against Selene Finance, LP on behalf of himself and the class he seeks to represent as follows:

    (A)    Declaring this action to be a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certifying Plaintiff as a representative of the Class and his counsel as Class counsel;

    (B)    Awarding Plaintiff and the members of the Class damages, including interest;

    (C)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including and attorneys' fees; and

    (D)    Awarding such equitable/injunctive or other relief as the Court may deem just and proper

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to issues so triable.

Dates: November 2, 2018

/s/Igor Meystelman
IM Law Group, P.C.
445 Central Avenue, Suite 108
Cedarhurst, New York 11516
P: (516) 344-8010
F: (888) 469-6858
igor@theimlawgroup.com

*Counsel for Plaintiff and Proposed Lead Counsel for the Class*